T.C. Memo. 2020-111

UNITED STATES TAX COURT

JESUS R. OROPEZA AND FABIOLA ANAYA OROPEZA, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9623-16.                          Filed July 21, 2020.

<u>Tim A. Tarter</u>, <u>Kacie N.C. Dillon</u>, and <u>Jonathan A. Halmi</u>, for petitioners.

<u>Doreen M. Susi</u>, <u>John R. Gordon</u>, <u>John W. Stevens</u>, and <u>Michael R. Harrel</u>, for respondent.

MEMORANDUM OPINION

LAUBER, <u>Judge</u>:  This case is before the Court on the parties' cross-motions for partial summary judgment on the question whether the Internal Revenue Service (IRS or respondent) secured timely written supervisory approval, as required by section 6751(b)(1), for three penalties determined in the notice of defi-

[*2] ciency for petitioners' 2012 tax year.[1] We conclude that the IRS did not secure timely approval for a 40% penalty determined for failure to disclose a "noneconomic substance transaction" under section 6662(b)(6) and (i). But we conclude that the IRS secured timely approval for two alternative 20% penalties, determined for negligence or a substantial understatement of income tax. See sec. 6662(b)(1) and (2). We will accordingly grant in part and deny in part each party's motion for partial summary judgment.

## Background

The following facts are based on the parties' pleadings and motion papers, including the attached declarations and exhibits. Petitioners resided in Arizona when they timely petitioned this Court.

Petitioner husband was the sole shareholder of FIRM, Inc. (FIRM), an S corporation. FIRM is an entity commonly known as a "micro-captive" insurance company. See Notice 2016-66, 2016-47 I.R.B. 745. In March 2014 an IRS revenue agent (RA) in Phoenix, Arizona, opened an examination for petitioners' 2011 tax year (a year not at issue in this case). In May 2014 the examiner expanded the examination to the 2012 tax year (the year at issue in this case).

---

[1]All statutory references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

**[*3]**  The period of limitations for 2012 was set to expire on April 15, 2016.  On November 20, 2015, the RA sent petitioners a Letter 5153 with an attached Form 4549-A, Income Tax Discrepancy Adjustments, commonly known as a revenue agent report (RAR).  The RAR proposed to increase by $1,070,200 petitioner husband's distributive share of FIRM's income.  In a schedule captioned "Accuracy-Related Penalties under IRC 6662(a)," the RAR asserted a 40% penalty attributable to one or more of the following:  (1) a gross valuation misstatement, (2) a non-disclosed transaction lacking economic substance, and (3) undisclosed foreign financial assets.  See sec. 6662(h), (i), and (j).

This schedule had a space in which the RA could have asserted a 20% penalty attributable to (among other things) negligence or a substantial understatement of income tax.  However, the underpayment to which any 20% penalty would be applied was listed as zero, and the amount of the 20% penalty was listed as zero.  There is no indication anywhere in the RAR that the 20% penalty was being asserted as an alternative to the 40% penalty.

The Letter 5153 gave petitioners three options:  (1) agree to the adjustments in the RAR, (2) execute a Form 872, Consent to Extend the Time to Assess Tax, if they wished to have the IRS Office of Appeals (Appeals) review the case, or (3) decline the first two options.  If petitioners declined the first two options, the

**[\*4]** Letter 5153 advised that the IRS would issue them a notice of deficiency reflecting the adjustments in the RAR, enabling them to petition this Court for redetermination of the deficiency and penalty.

Petitioners did not agree to the adjustments in the RAR and did not agree to extend the period of limitations by executing the Form 872. On December 4, 2015, the RA accordingly closed the case. On December 9, 2015, his then-immediate supervisor, Group Manager Pimentel, signed a Civil Penalty Approval Form authorizing assertion of a 20% penalty for negligence or a substantial under-statement of income tax. The "no" boxes were checked for "alternative penalty position" and for "section 6662(b) other accuracy related [penalty]." The form shows no approval for any 40% penalty.[2]

The RA and Group Manager Pimentel subsequently prepared a memoran-dum for IRS Chief Counsel Attorney Brandon Keim. This memorandum recom-mended the assertion of a 40% penalty under section 6662(i) for an underpayment attributable to a "nondisclosed noneconomic substance transaction." This memor-andum was not dated, but it was digitally signed by Group Manager Pimentel on January 28, 2016.

---

[2]The "yes" box was checked for a 20% penalty under section 6662A, which applies to understatements attributable to reportable transactions. Representing that this box was checked in error, respondent is no longer asserting that penalty.

**[\*5]**  On February 9, 2016, the IRS issued petitioners a notice of deficiency deter-mining a deficiency of $374,570 and a 40% penalty of $149,828, corresponding to the amounts determined in the RAR.  The notice explained that the 40% penalty was appropriate because the underpayment was "attributable to one or more non-disclosed noneconomic substance transactions."  The notice set forth in the alter-native a 20% penalty for negligence or a substantial understatement of income tax.  Petitioners agree that these alternative 20% penalties were communicated to them for the first time in the notice of deficiency.[3]

Petitioners timely petitioned this Court for redetermination of the deficiency and the penalties.  Respondent filed a motion for partial summary judgment urging that he had secured timely supervisory approval for all of the penalties.  Petitioners filed a cross-motion urging that none of the penalties had been timely approved.

Discussion

A.    Summary Judgment Standard

The purpose of summary judgment is to expedite litigation and avoid costly, unnecessary, and time-consuming trials.  See FPL Grp., Inc. & Subs. v. Commis-sioner, 116 T.C. 73, 74 (2001).  We may grant summary judgment regarding an

---

[3]The notice of deficiency elsewhere refers to a "gross valuation misstate-ment" penalty under section 6662(h).  Representing that this was a clerical error, respondent is no longer asserting that penalty.

**[*6]** issue as to which there is no genuine dispute of material fact and a decision may be rendered as a matter of law. Rule 121(b); <u>Sundstrand Corp. v. Commissioner</u>, 98 T.C. 518, 520 (1992), <u>aff'd</u>, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. <u>Sundstrand Corp.</u>, 98 T.C. at 520. The parties have filed cross-motions for summary judgment limited to the question whether the penalties received timely approval. We find that this question may be adjudicated summarily.

B.      <u>Penalty Approval</u>

Section 7491(c) generally provides that "the Secretary shall have the burden of production in any court proceeding with respect to the liability of any individual for any penalty." This burden requires the Commissioner to come forward with sufficient evidence indicating that imposition of a penalty is appropriate. <u>See</u> <u>Higbee v. Commissioner</u>, 116 T.C. 438, 446 (2001). The Commissioner's burden of production under section 7491(c) includes establishing compliance with section 6751(b)(1). <u>See</u> <u>Chai v. Commissioner</u>, 851 F.3d 190, 217, 221-222 (2d Cir. 2017), <u>aff'g in part, rev'g in part</u> T.C. Memo. 2015-42; <u>Graev v. Commissioner</u>, 149 T.C. 485 (2017), <u>supplementing and overruling in part</u> 147 T.C. 460 (2016). The latter section provides that "[n]o penalty under this title shall be assessed un-

[*7] less the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination."

In Belair Woods, LLC v. Commissioner, 154 T.C. __, __ (slip op. at 23) (Jan. 6, 2020), we held that the "initial determination" of a penalty assessment is typically embodied in a letter "by which the IRS formally notifie[s] * * * [the taxpayer] that the Examination Division ha[s] completed its work and * * * ha[s] made a definite decision to assert penalties." Here, the IRS' determination to assert the 40% penalty was first communicated to petitioners on November 20, 2015, in the Letter 5153 and the accompanying RAR. The Letter 5153 gave petitioners three options: accept the adjustments set forth in the RAR, sign a Form 872 and go to Appeals, or receive a notice of deficiency. This letter made clear that the Examination Division had concluded its work and "had made a definite decision to assert penalties." See ibid.

Respondent seeks to distinguish this case from Belair Woods, noting that the taxpayer there received a 60-day letter enabling it to go to Appeals, whereas petitioners did not receive a 30-day letter enabling them to do so. We find this a distinction without a difference. A 30- or 60-day letter is one way of communicating to a taxpayer that the Examination Division has concluded its work. But it is

**[\*8]** not the only way. The Letter 5153 clearly communicated the same message to petitioners: It told them that they could now go to Appeals, but only if they first executed a Form 872 that would give Appeals enough time to consider their case.

We accordingly conclude that the IRS was required to secure supervisory approval for the 40% penalty on or before November 20, 2015. Respondent does not contend that he did so: The Civil Penalty Approval Form was not signed by Group Manager Pimentel until December 9, 2015, and it did not approve a 40% penalty. With respect to that penalty the IRS therefore failed to comply with section 6751(b)(1). Accord, Carter v. Commissioner, T.C. Memo. 2020-21, at \*29-\*30 (concluding that a Letter 5153 and attached RAR embodied the "initial determination" of the penalties included in the RAR).[4]

On the other hand, as petitioners acknowledge, the 20% penalties for negligence or a substantial understatement of income tax were first communicated to them in the notice of deficiency issued February 9, 2016. That notice embodied the IRS' definite decision to assert the 20% penalties. See Belair Woods, 154 T.C. at __ (slip op. at 23); cf. Chai, 851 F.3d at 221 (interpreting section 6751(b)(1) to

---

[4]Petitioners raise concerns about the memorandum signed by Group Manager Pimentel on January 28, 2016, recommending assertion of the 40% penalty. Because approval for the 40% penalty after that date would have been too late, we need not address petitioners' concerns.

**[*9]** "require[] written approval of the initial penalty determination no later than the date the IRS issues the notice of deficiency * * * asserting such penalty").

Approval of the 20% penalties was thus required no later than February 9, 2016. The Civil Penalty Approval Form approving assertion of the two penalties was signed by Group Manager Pimentel, the RA's immediate supervisor, on December 9, 2015. His approval of these two penalties was thus timely.

Petitioners contend that the Civil Penalty Approval Form is defective because Group Manager Pimentel's signature appears only on the first page of the form, not on the second page, which lists the specific penalties being approved. This argument is a nonstarter. Both pages are part of a document that is denominated "Civil Penalty Approval Form." Page 1 of the form contains a space at the bottom for "Group Manager Signature" and "Date." Group Manager Pimentel affixed his signature and date in the spaces provided; there is no space on page 2 for a signature, and he was not required to interpolate one. We have repeatedly relied on Civil Penalty Approval Forms signed and dated as this one was. See, e.g., Frost v. Commissioner, 154 T.C. __, __ (slip op. at 21-22) (Jan. 7, 2020); Sellers v. Commissioner, T.C. Memo. 2020-84, at *6, *24; Novoselsky v. Commissioner, T.C. Memo. 2020-68, at *30.

**[*10]** Petitioners also assert that Group Manager Pimentel did not conduct a "meaningful review of the penalty determination."  We rejected this argument in Belair Woods,154 T.C. at __ (slip op. at 27), noting that "[s]ection 6751(b)(1) requires only that the initial determination of a penalty assessment be 'personally approved (in writing) by the immediate supervisor.'"  We decline here, as we declined in Belair Woods, "'to read into section 6751(b)(1) the subtextual requirement' that respondent demonstrate the depth or comprehensiveness of the supervisor's review."  Ibid. (quoting Raifman v. Commissioner, T.C. Memo. 2018-101, at *61).  Group Manager Pimentel's signature is all that was needed to demonstrate his approval.

In sum, we conclude that respondent has not complied with section 6751(b)(1) with respect to the 40% penalty determined in the notice of deficiency but that he has complied with respect to the alternative 20% penalties determined for negligence or a substantial understatement of income tax.  We will accordingly grant in part and deny in part each party's motion for partial summary judgment.

In consideration of the foregoing,

An appropriate order will be issued.